UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KENNETH ROTH; DANIEL FROOMKIN; BEVERLY GAGE; PETER SCHMIDT-NOWARA; BENJAMIN WITTES; and ETHAN YOUNG,

Plaintiffs,

v.

DONALD J. TRUMP, in his official capacity as President of the United States; STEVEN CHEUNG, in his official capacity as Assistant to the President for Communications; SEAN M. CURRAN, in his official capacity as Director of the Secret Service; and SUSAN WILES, in her official capacity as White House Chief of Staff,

Defendants.

No. 26 Civ. 9327 (LGS)

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

JAMES M. MCDONALD
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2724
Email: pierre.armand@usdoj.gov

PIERRE G. ARMAND
Assistant United States Attorney
—*Of Counsel*—

TABLE OF CONTENTS

PRELIMINARY STATEMENT....1

BACKGROUND....3

A. The Associated Press Lawsuit....3

B. The CNN/MS NOW/Politico Lawsuit....4

C. Plaintiffs' Lawsuit....4

ARGUMENT....6

I. THE COURT SHOULD TRANSFER THIS ACTION TO THE D.D.C. ....6

II. THE COURT SHOULD DENY PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION....14

A. Applicable Legal Standard....14

B. Plaintiffs Fail to Establish Irreparable Harm....15

C. Plaintiffs Fail to Show a Clear Likelihood of Success on the Merits....19

D. Plaintiffs Fail to Show that a Preliminary Injunction Furthers the Public Interest....26

CONCLUSION....27

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Abramowitz v. Lake*,
824 F. Supp. 3d 1 (D.D.C. 2026) ........................................ 25

*Alpha Industries, Inc. v. Alpha Clothing Co. LLC*,
No. 21 Civ. 87 (KPF), 2021 WL 2688722 (S.D.N.Y. June 30, 2021)........................................ 8

*Am. Civ. Liberties Union v. Clapper*,
785 F.3d 787 (2d Cir. 2015)........................................ 19

*Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.,*
*474 F. Supp. 2d 474 (S.D.N.Y. 2007)*........................................ 12

*Associated Press v. Budowich*,
780 F. Supp. 3d 32 (D.D.C. Apr. 8, 2025)........................................ 3

*Associated Press v. Budowich*,
No. 25-5109, 2025 WL 1649265 (D.C. Cir. June 6, 2025)........................................ p

*Baldwin Hardware Corp. v. Harden Industries*, Inc.,
663 F. Supp. 82 (S.D.N.Y. 1987) ........................................ 14

*Bd. of Educ. v. Pico*,
457 U.S. 853 (1982)........................................ 26

*Bender v. Obama*,
653 F. App'x 31 (2d Cir. 2016)........................................ 22

*Burgos v. United* States,
16 Civ. 7091 (RA), 2017 WL 2799172 (S.D.N.Y. Jun. 27, 2017) ........................................

*Cable News Network v. Trump*,
No. 26 Civ. 3287 (TJK), 2026 WL 3063460 (D.D.C. Oct. 13, 2026)........................................ passim

*Citibank, N.A. v. Citytrust*,
756 F.2d 273 (2d Cir. 1985)........................................ 15

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983)........................................ 20

*City of Newburgh v. Sarna*,
690 F. Supp. 2d 136 (S.D.N.Y. 2010) ........................................ 16

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ..... 19, 21

*Corley v. United States*,
11 F.4th 79 (2d Cir. 2021) ..... 7

*Costello v. McEnerny*,
767 F. Supp. 72 (S.D.N.Y. 1991) ..... 17

*Council for Responsible Nutrition v. James*,
No. 24 Civ. 1881 (ALC), 2024 WL 1700036 (S.D.N.Y. Apr. 19, 2024) ..... 17

*Damone v. Teamsters Local 804*,
No. 18 Civ. 4059 (LDH)(ST), 2018 WL 7821134 (E.D.N.Y. Oct. 30, 2018) ..... 16

*Davis v. Pension Benefit Guarantee Corp.*,
571 F.3d 1288 (D.C. Cir. 2009) ..... 27

*Diamond v. Charles*,
476 U.S. 54 (1986) ..... 22

*Dickerson v. Novartis Corp.*,
315 F.R.D. 18 (S.D.N.Y. 2016) ..... 13

*DiPizio v. Empire State Development Corp.*,
No. 15 Civ. 5339 (GHW), 2015 WL 5824704 (S.D.N.Y. Oct. 5, 2015) ..... 10, 11

*Dish Network, L.L.C. v. American Broad. Cos. (In re AutoHop Litig.)*,
No. 12 Civ. 4155, 2013 WL 5477495, at *10 (S.D.N.Y. Oct. 1, 2013) ..... 17

*Do No Harm v. Pfizer Inc.*,
126 F. 4th 109 (2d Cir. 2025) ..... 20

*Dynamic Data Technologies, LLC v. HTC Corp.*,
No. 18 Civ. 10180 (GHW), 2019 WL 2433549 (S.D.N.Y. Jun. 11, 2019) ..... 8, 11, 12, 14

*Equal Vote Am. Corp. v. Pelosi*,
No. 19 CIV. 777 (KPF), 2020 WL 1467319 (S.D.N.Y. Mar. 26, 2020) ..... 23

*Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*,
928 F. Supp. 2d 735 (S.D.N.Y. 2013) ..... 13

*Faiveley Transport Malmo AB v. Wabtec Corp.*,
559 F.3d 110 (2d Cir. 2009) ..... 15

*Fischer v. Cruz*,
No. 16 Civ. 1224 (JS) (ARL), 2016 WL 1383493 (E.D.N.Y. Apr. 7, 2016) ..... 23

*Florida Power & Light Co. v. Lorion*,
470 U.S. 729 (1985) ........ 10

*Freeplay Music, LLC v. Gibson Brands, Inc.*,
195 F. Supp. 3d 613 (S.D.N.Y. 2016) ........ 10, 11

*Fuji Photo Film Co., Ltd. v. Lexar Media, Inc.*,
415 F. Supp. 2d 370 (S.D.N.Y. 2006) ........ 12

*Giordano v. Offray*,
No. 18 Civ. 6816 (GHW), 2019 WL 13252609 (S.D.N.Y. May 21, 2019) ........ 11

*Gordon v. State Farm Fire & Casualty Co.*,
No. 24 Civ. 8392 (GHW), 2025 WL 1079096 (S.D.N.Y. Apr. 10, 2025) ........ 8, 9, 10

*Grand River Enterprises Six Nations, Ltd. v. Pryor*,
481 F.3d 60 (2d Cir. 2007) ........ 15, 16

*Halkin v. Helms*,
690 F. 2d 977 (D.C. Cir. 1982) ........ 18

*Hester v. French*,
985 F.3d 165 (2d Cir. 2021) ........ 15

*Hollingsworth v. Perry*,
570 U.S. 693 (2013) ........ 22

*Houchins v. KQED, Inc.*,
438 U.S. 1 (1978) ........ 26

*In re Dow Jones & Co.*, Inc.,
842 F. 2d 603 (2d Cir. 1988) ........ 26

*Insurance Co. of the State of Pa. v. Lakeshore Toltest JV, LLC*,
No. 15 Civ. 1436 (ALC), 2015 WL 8488579 (S.D.N.Y. Nov. 30, 2015) ........ 17

*Invivo Research, Inc. v. Magnestic Resonance Equipment Corp.*,
119 F. Supp. 2d 433 (S.D.N.Y. 2000) ........ 12

*It's a 10, Inc. v. PH Beauty Labs*, Inc.,
718 F. Supp. 2d 332 (S.D.N.Y. 2010) ........ 13

*Kalman v. Cortes*,
646 F. Supp. 2d 738 (E.D. Pa. 2009) ........ 9

*Kerven v. United States*,
792 Fed.Appx. 900 (2d Cir. 2020) ........ 23

*Larew v. Larew*,
No. 11 Civ. 5771 (BSJ) (GWG), 2012 WL 87616 (S.D.N.Y. Jan. 10, 2012)........................... 10

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014)........................................................................................................ 20

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992).................................................................................................. 20, 22

*Lyon v. Cornell Univ.*,
No. 97 Civ. 7070 (JGK), 1998 WL 226193 (S.D.N.Y. May 4, 1998)...................................... 14

*Majorica, S.A. v. R.H. Macy & Co., Inc.*,
762 F.2d 7 (2d Cir. 1985)................................................................................................ 16

*Million Youth March, Inc. v. Safir*,
18 F. Supp. 2d 334 (S.D.N.Y. 1998)................................................................................ 17

*Monowise Limited Corp. v. Ozy Media, Inc.*,
No. 17 Civ. 8028 (JMF), 2018 WL 2089342 (S.D.N.Y. May 3, 2018).................................... 16

*Munaf v. Geren*,
553 U. S. 674 (2008)...................................................................................................... 20

*Murthy v. Missouri*,
603 U.S. 43 (2024)............................................................................................... 20, 21, 25

*N.Y. Marine & General Insurance Co. v. Lafarge North America, Inc.*,
599 F.3d 102 (2d Cir. 2010)............................................................................................... 8

*Nken v. Holder*,
556 U.S. 418 (2009)........................................................................................................ 27

*O'Shea v. Littleton*,
414 U. S. 488 (1974)...................................................................................................... 21

*Payless Shoesource, Inc. v. Avalon Funding Corp.*,
666 F. Supp. 2d 356 (E.D.N.Y. 2009)............................................................................... 11

*Pen American Center, Inc. v. Trump*,
448 F. Supp. 3d 309 (S.D.N.Y. 2020)......................................................................... 23, 24

*Ruiz ex rel. E.R. v. United States*,
No. 13 Civ. 1241 (KAM) (SMG), 2014 WL 4662241 (E.D.N.Y. Sept. 18, 2014)................... 12

*Schuyler v. Sun Life Assurance Co. of Canada*,
No. 20 Civ. 10905 (RA) (BCM), 2021 WL 5853991 (S.D.N.Y. Dec. 9, 2021)............. 8, 10, 14

*SEC v. Hill Int'l, Inc.*,
No. 20 Civ. 447 (PAE), 2020 WL 2029591 (S.D.N.Y. Apr. 28, 2020) ........ 9

*Sentegra, LLC v. ASUS Computer Int'l*,
15 Civ. 3768 (GHW), 2016 WL 3093988 (S.D.N.Y. Jun. 1, 2016) ........ 8

*Shady v. Tyson*,
5 F. Supp. 2d 102 (E.D.N.Y. 1998) ........ 17

*Sherrill v. Knight*,
569 F. 2d 124 (D.C. Cir. 1977) ........ 26

*Simpson v. Rodas*, No. 10 Civ. 6670 (CS),
2012 WL 4354832 (S.D.N.Y. Sept. 21, 2012) ........ 14

*Spokeo, Inc. v. Robbins*,
578 U.S. 330 (2016) ........ 21

*Students for Fair Admissions v. U.S. Military Academy at West Point*,
709 F. Supp. 3d 118 (S.D.N.Y. 2024) ........ 15

*T–Mobile Ne. LLC v. Water Authority of W. Nassau County*,
249 F. Supp. 3d 680 (E.D.N.Y. 2017) ........ 17

*Union Cosmetic Castle, Inc. v. Amorepacific Cosmetics USA, Inc.*,
454 F. Supp. 2d 62 (E.D.N.Y. 2006) ........ 17

*United States v. Richardson*,
418 U.S. 166 (1974) ........ 21

*Virginia Board of Pharmacy v. Virginia Citizens Consumer Council*, *Inc.*
408 U.S. 753 (1972) ........ 25

*Warth v. Seldin*,
422 U.S. 490 (1975) ........ 21

*Whitmore v. Arkansas*,
495 U.S. 149 (1990) ........ 21

*Winter v. Natural Resources Defense Council, Inc.*,
555 U.S. 7 (2008) ........ 15, 18, 19

*Worldwide Sport Nutritional Supplements, Inc. v. Five Star Brands, LLC*,
80 F. Supp. 2d 25 (N.D.N.Y. 1999) ........ 17

Statutes

28 U.S.C. § 1391(e)(1)(B) ........................................................................................................ 8

28 U.S.C. § 1404(a) ........................................................................................................ 7, 8, 10

Defendants President Donald J. Trump, Assistant to the President for Communications Steven Cheung, Secret Service Director Sean M. Curran, and White House Chief of Staff Stephen Miller[1] ("Defendants" or the "Government"), respectfully submit this memorandum of law in opposition to Plaintiffs' motion for a preliminary injunction ("Pl. Br."), ECF No. 11.

## PRELIMINARY STATEMENT

In February 2025, the Associated Press wire service ("AP") filed a lawsuit in the U.S. District Court for the District of Columbia ("D.D.C.") against multiple White House officials alleging that the officials violated AP's First Amendment rights by excluding AP from the White House Oval Office, Air Force One, and other restricted areas based on the content of its reporting. Although the district court issued a preliminary injunction in April 2025 enjoining these exclusions, in June 2025, the D.C. Circuit granted a stay pending appeal that limited the injunction to the White House East Room, holding that AP's constitutional claims were unlikely to succeed on the merits because none of these areas is a forum to which First Amendment protections apply, and that an injunction would cause irreparable harm by limiting the President's independence and control over his private workspaces.

Then in September 2026, the media companies Cable News Network ("CNN"), Politico, MS NOW, and certain of their employees sued the President and his aides also in D.D.C. for allegedly revoking their White House press passes based on the content of their reporting. In October 2026, the district court issued a preliminary injunction requiring the restoration of the press passes.

---

[1] Stephen Miller is automatically substituted as a defendant for former White House Chief of Staff Susan Wiles pursuant to Fed. R. Civ. P. 25(d)(1).

On October 26, 2026, Plaintiffs, six members of the public who claim to be consumers of White House press corps journalism, brought this lawsuit alleging that the same conduct at issue in the above lawsuits also violates their First Amendment rights as listeners to the reporters' speech. Although Plaintiffs purport to challenge the President's "policy" of White House access to reporters whose viewpoints he does not like, the principal alleged incidents of reporter exclusion are those at issue in the two D.D.C. lawsuits noted above and one alleged October 2026 incident involving a reporter from the Independent who was not allowed to fly on Air Force One. Plaintiffs seek a broad injunction barring Defendants (except the President) from continuing this policy.

As a threshold matter, the Court should transfer this case to D.D.C., as the only apparent nexus to this District is the residence of a single Plaintiff, and the locus of the operative alleged facts is already the subject of litigation in D.D.C.

If the Court elects to consider Plaintiffs' preliminary injunction motion, the Court should deny it. First, Plaintiffs cannot show irreparable harm because any claim of harm is negated by Plaintiffs' 20-month delay in challenging an alleged policy in place since February 2025, and the alleged incidents of reporter exclusion that Plaintiffs claim have caused them listener injuries have already been enjoined or determined unlikely to constitute First Amendment violations. Second, Plaintiffs cannot demonstrate a clear likelihood of success on the merits because they cannot establish Article III standing for the same reasons they fail to show irreparable harm, and because they are asserting generalized grievances that are available to any member of the public. Nor can Plaintiffs show a likelihood of success on the merits of their First Amendment listener claims to the extent that they are premised on reporters who were allegedly denied access to areas that the D.C. Circuit has already indicated are not fora to which the First Amendment applies. Finally,

Plaintiffs cannot show that the balance of harms and public interest favor the drastic and extraordinary remedy of injunctive relief, as the D.C. Circuit has held that they do not.

## BACKGROUND

### A. The Associated Press Lawsuit

In February 2025, the AP sued White House officials in the D.D.C. alleging that their exclusion of AP from White House press pool and limited-access events constituted viewpoint discrimination and retaliation in violation of the First Amendment. *Associated Press v. Budowich*, 780 F. Supp. 3d 32 (D.D.C. Apr. 8, 2025). In April 2025, the D.D.C. granted a preliminary injunction, holding that: AP's exclusion likely constituted viewpoint discrimination and retaliation; such exclusion likely had an adverse effect on AP's speech; and the exclusion caused irreparable harm to AP. *Id*. The D.D.C. issued a preliminary injunction prohibiting White House officials from denying AP, on the basis of its viewpoint, access to press events held in the Oval Office, on Air Force One, and at the President's home in Mar-a-Lago. *Id*. at 39.

In June 2025, the D.C. Circuit granted in part the government's motion for a stay pending appeal, holding that the Government "is likely to succeed on the merits because these restricted presidential spaces are not First Amendment fora opened for private speech and discussion"; the White House "retains discretion to determine, including on the basis of viewpoint, which journalists will be admitted"; and "without a stay, the government will suffer irreparable harm because the injunction impinges on the President's independence and control over his private workspaces." *Associated Press v. Budowich*, No. 25-5109, 2025 WL 1649265, at *1 (D.C. Cir. June 6, 2025). Accordingly, the D.C. Circuit issued "a stay with respect to the Oval Office, Air Force One, Mar-a-Lago, and other similar spaces" and "decline[d] to stay the part of the preliminary injunction applicable to the East Room." *Id*. at *13.

**B. The CNN/MS NOW/Politico Lawsuit**

In September 2026, CNN, MS NOW, Politico, and certain of their reporters sued the President and Executive Branch officials, alleging that the President and officials violated their Fifth Amendment due process rights and engaged in viewpoint discrimination and retaliation in violation of the First Amendment by revoking their White House "hard pass" press credentials. *See Cable News Network v. Trump*, No. 26rdo Civ. 3287 (TJK), 2026 WL 3063460, at *1-2 (D.D.C. Oct. 13, 2026). After entering a temporary restraining order, the D.D.C. granted a preliminary injunction, holding that the plaintiffs were likely to succeed on the merits of their Fifth and First Amendment claims; the plaintiffs were likely to suffer irreparable injury absent an injunction; and the balance of equities and public interest favored granting a preliminary injunction. *Id*. The D.D.C. ordered the defendants (except for the President) to immediately return, reinstate, and restore the press credentials to the CNN, MS NOW, and Politico employees. *Id*.

**C. Plaintiffs' Lawsuit**

On October 26, 2026, Plaintiffs filed this lawsuit against the Government, alleging that the President and his aides have adopted a "policy and practice of punishing members of the White House press corps whose reporting the president views as 'false' or 'fake'" and that "[i]n furtherance of the Policy, the White House has revoked journalists' press credentials and expelled them from spaces where they had previously been allowed to gather and report the news." ECF No. 1 ("Compl.") ¶ 1. Plaintiffs cite to three principal examples of Defendants improperly denying reporters access to the White House pursuant to this alleged policy: (i) the alleged February 2025 incident in which Defendants excluded AP from White House press pool and limited-access events, *id*. ¶¶ 2, 37; (ii) the alleged September 2026 incident in which Defendants revoked the White House hard passes of CNN, Politico, and MS Now reporters, *id*. ¶¶ 2, 38-39, 41-45; and (iii) an

alleged October 2026 incident in which Defendants excluded a reporter of the Independent from serving as a print pool reporter on Air Force One for a trip to Iowa, *id*. ¶¶ 2, 46.

Plaintiffs also complain that on four occasions in September and October 2026, Defendants barred CNN from accompanying the President aboard a flight on Air Force One to the United Nations, excluded CNN and MS NOW from covering a state dinner, prevented CNN from accompanying the President on a trip to Tennessee, and excluded Politico from traveling on a flight aboard Air Force One. *Id*. ¶ 44.

Plaintiffs assert that they "commence[d] this suit to vindicate their right to receive news coverage that is not limited by the president's unlawful expulsions or distorted by the president's unconstitutional threats." *Id.* ¶ 5. Plaintiffs assert that they are "six individual citizens who research, teach, and write about the president and his administration." Pl. Br. at 11. Plaintiffs allege that Kenneth Roth is a human rights advocate and legal scholar residing in New York, New York; Daniel Froomkin is a journalist residing in Washington, D.C.; Beverly Gage is a historian and professor residing in Connecticut; Peter Schmidt-Nowara is a high school teacher residing in Brooklyn, New York; Benjamin Wittes is a journalist residing in Washington, D.C.; and Ethan Young is a university student and journalist residing in Philadelphia, Pennsylvania. Compl. ¶¶ 11-16.

Plaintiffs allege that they "rely on the White House press corps for independent reporting about the president and his administration" and "use that reporting in a variety of ways in their scholarship, teaching, journalism, or advocacy." *Id*. ¶ 5. In particular, Plaintiffs allege that Roth "cites White House reporting in his public writing, assigns White House reporting to his students, and . . . engages . . . with White House reporting on social media," Pl. Br. 12; Compl. ¶¶ 48-50; Froomkin likewise "cites White House reporting in his public writing and . . . engages . . . with

White House reporting on social media," Pl. Br. 12; Compl. ¶¶ 51-53; Gage "draws on White House reporting for her historical research, cites White House reporting in her public writing, and assigns White House reporting to her students," Pl. Br. 12; Compl. ¶¶ 54-56; Schmidt-Nowara uses White House reporting in teaching his students, Pl. Br. 12; Compl. ¶¶ 57-59; Wittes "uses White House reporting to research and source ideas" for his journalism, Pl. Br. 12; Compl. ¶¶ 60-62; and Young "uses and cites to White House reporting in his own journalism and editorial work," Pl. Br. 12; Compl. ¶¶ 63-65.

Plaintiffs claim the alleged policy injures them "because it deprives them of reporting of the journalists and news organizations that Defendants have targeted under the Policy; because it will deprive them of the reporting of the journalists and news organizations that Defendants target under the Policy in the future; and because the threat of being targeted in the future is likely to distort the reporting of news organizations today." *Id.* ¶ 5.

Plaintiffs' Complaint seeks a preliminary injunction "barring Defendants from enforcing the Policy," but they do not move to enjoin the President at this time. Compl. ¶ 6; Pl. Br. at 3.

## ARGUMENT

### I. THE COURT SHOULD TRANSFER THIS ACTION TO THE D.D.C.

The Court should transfer this action to D.D.C. without considering Plaintiffs' motion for a preliminary injunction. "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "District courts have broad discretion in making determinations of convenience under Section 1404(a)." *Corley v. United States*, 11 F.4th 79, 89 (2d Cir. 2021) (quotation marks omitted).

In considering transfer, courts engage in a two-part inquiry. *See, e.g.*, *Burgos v. United* States, 16 Civ. 7091 (RA), 2017 WL 2799172, at *2 (S.D.N.Y. Jun. 27, 2017). "First, the court must determine whether the action could have been brought in the proposed transferee forum." *Id.* (quotation marks omitted). "Second, the court must . . . determine whether transfer is appropriate." *Id.* (quotation marks omitted). To determine whether transfer is appropriate, courts in this District consider the following factors: (1) the locus of operative facts; (2) the convenience of the parties; (3) the convenience of the witnesses; (4) the location of relevant documents and relative ease of proof; (5) the relative means of the parties; (6) the availability of process to compel attendance of unwilling witnesses; (7) a forum's familiarity with the governing law; (8) the weight accorded to the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice based on the totality of the circumstances. *Schuyler v. Sun Life Assurance Co. of Canada*, No. 20 Civ. 10905 (RA) (BCM), 2021 WL 5853991, at *3 (S.D.N.Y. Dec. 9, 2021). The party requesting transfer bears the burden of establishing that transfer is warranted by clear and convincing evidence. *See id*. at *2 (citing *N.Y. Marine & General Insurance Co. v. Lafarge North America, Inc*., 599 F.3d 102, 114 (2d Cir. 2010)). But "[t]he list of factors is not exhaustive," and "weighing the balance is essentially an equitable task left to the Court's discretion." *Dynamic Data Technologies, LLC v. HTC Corp*., No. 18 Civ. 10180 (GHW), 2019 WL 2433549, at *2 (S.D.N.Y. Jun. 11, 2019) (quotation marks omitted).

Here, at the first part of the inquiry, this action could have been brought in D.D.C. because "a substantial part of the events or omissions giving rise to the claim[s] occurred" there. 28 U.S.C. § 1391(e)(1)(B). It cannot be fairly disputed that the alleged improper exclusion of journalists from the White House that Plaintiffs challenge occurred in Washington, D.C., where the White House is located. At the second part of the inquiry, transfer is appropriate because the relevant factors

weigh decidedly in favor of D.D.C. as the appropriate venue for Plaintiffs' challenge to the alleged press access policy at the White House.

***The Operative Facts All Occurred in the District of Columbia.*** Here, "[t]he factor that weighs most heavily in favor of transfer is the locus of operative facts." *Gordon v. State Farm Fire & Casualty Co*., No. 24 Civ. 8392 (GHW), 2025 WL 1079096, at *4 (S.D.N.Y. Apr. 10, 2025). "To determine the locus of operative facts, a court must look to the site of the events from which the claim arises." *Sentegra, LLC v. ASUS Computer Int'l*, 15 Civ. 3768 (GHW), 2016 WL 3093988, at *5 (S.D.N.Y. Jun. 1, 2016) (quotation marks omitted). "The location of the operative events is a primary factor in determining a § 1404(a) motion to transfer." *Alpha Industries, Inc. v. Alpha Clothing Co. LLC*, No. 21 Civ. 87 (KPF), 2021 WL 2688722, at *6 (S.D.N.Y. June 30, 2021) (quotation marks omitted). All of the conduct that Plaintiffs claim violated their First Amendment rights occurred in Washington, D.C. Plaintiffs allege that the President and his aides have adopted a policy and practice of punishing members of the media whose reporting the President disagrees with by revoking their press credentials and expelling them from spaces where they had previously been allowed to gather and report the news. Compl. ¶¶ 1-2. Plaintiffs then cite to members of the media whose access to the White House was restricted under this alleged policy, including journalists from AP, CNN, Politico and MS NOW, all of whom filed lawsuits challenging these restrictions in D.D.C. alleging that a substantial part of the events giving rise to their claims arose there. *Id.* ¶¶ 37-43; *Associated Press*, No. 25 Civ. 532, ECF No. 1, ¶ 19 (D.D.C. February 21, 2025) (Complaint); *Cable News Network*, No. 26 Civ. 3287, ECF No. 1, ¶ 22 (D.D.C. Sept. 21, 2026) (Complaint). Thus, it is clear that the locus of operative facts is at the White House in Washington, D.C.

By contrast, the Complaint "does not allege any facts that took place in the Southern District of New York." *Gordon*, 2025 WL 1079096, at *4; *see also id.* ("This factor 'substantially favors transfer from this district when a party has not shown that any of the operative facts arose in the Southern District of New York.'" (quoting *SEC v. Hill Int'l, Inc.*, No. 20 Civ. 447 (PAE), 2020 WL 2029591, at *4 (S.D.N.Y. Apr. 28, 2020))). The only apparent connection this case has to this District is that one of the plaintiffs, Roth, resides here, Compl. ¶ 11, although two of the plaintiffs, Froomkin and Wittes, reside in Washington, D.C., *id.* ¶¶ 12, 15. But the mere fact that a plaintiff resides in this District is insufficient to create venue, as a First Amendment plaintiff "suffers harm only where the speech would have taken place," *Kalman v. Cortes*, 646 F. Supp. 2d 738, 742 (E.D. Pa. 2009), which in this case is at the White House in Washington, D.C. Even if Plaintiffs could allege some conduct in this District, the fact that Plaintiffs' claims are rooted at the White House counsels in favor of transfer. *See DiPizio v. Empire State Development Corp.*, No. 15 Civ. 5339 (GHW), 2015 WL 5824704, at *7 (S.D.N.Y. Oct. 5, 2015) (transferring case to Western District of New York where conspiracy allegations were "rooted in" that District despite allegations that certain underlying conduct occurred at offices in this District). Accordingly, "[t]his factor substantially favors transfer from this district." *Gordon*, 2025 WL 1079096, at *4 (quotation marks omitted).

***D.D.C. Is the More Convenient Venue for Witnesses.*** The convenience of witnesses also favors transfer to D.D.C.[2] "Courts typically regard the convenience of witnesses as the most important factor in considering a § 1404(a) motion to transfer." *Schuyler*, 2021 WL 5853991, at *3 (quotation marks omitted). Courts must consider the "materiality, nature, and quality of each

---

[2] In addressing this and other factors germane to discovery, Defendants reserve their rights to challenge any discovery Plaintiffs may seek.

witness, not merely the number of witnesses in each district." *Freeplay Music, LLC v. Gibson Brands, Inc.*, 195 F. Supp. 3d 613, 617 (S.D.N.Y. 2016) (quotation marks omitted). Moreover, although the party seeking transfer is sometimes required to identify potential witnesses who would be inconvenienced by proceeding in the current forum, where—as here—the party requesting transfer "seeks a transfer 'on account of several factors, his failure to specify key witnesses and their testimony is not fatal.'" *Gordon*, 2025 WL 1079096, at *5 (quoting *Larew v. Larew*, No. 11 Civ. 5771 (BSJ) (GWG), 2012 WL 87616, at *4 (S.D.N.Y. Jan. 10, 2012)). In this case, "[a] corollary" to the locus of operative facts analysis above "is that to the extent witnesses . . . are identified, they will likely reside in, and be subject to service of process in, the [District of Columbia], and find it more convenient to testify in their home district." *Giordano v. Offray*, No. 18 Civ. 6816 (GHW), 2019 WL 13252609, at *2 (S.D.N.Y. May 21, 2019). Based on Plaintiffs' claims, virtually all relevant government witnesses with knowledge of the alleged White House press-access policy and its implementation will be located in or around Washington, D.C. Compl. ¶¶ 18-20. Likewise, reporters who were allegedly improperly denied access to the White House are located in the vicinity of Washington, D.C. *See Cable News Network*, No. 26 Civ. 3287, ECF No. 1, ¶¶ 12-14 (D.D.C. September 21, 2026) (two reporters claim to be based in Washington, D.C., and one claims to be based in Arlington, Virginia). As noted above, two of Plaintiffs claim to reside in Washington, D.C., while only one claims to reside in this District. Compl. ¶¶ 11-12, 15. At bottom, the "materiality, nature, and quality" of witnesses who are either located in the District of Columbia or who may readily travel there supports transfer. *Freeplay Music*, 195 F. Supp. 3d at 617. That is particularly true with respect to non-party members of the White House Press Corps whose access to the White House was allegedly restricted in violation of the First Amendment. *See Payless Shoesource, Inc. v. Avalon Funding Corp.*, 666 F. Supp. 2d 356, 364

(E.D.N.Y. 2009) (inconvenience of employees or agents of the parties does not weigh as heavily as inconvenience of non-party witnesses); *accord DiPizio*, 2015 WL 5824704, at *6. And Plaintiffs have not identified any potential government witnesses located in this District. Accordingly, this factor also supports transfer to D.D.C.

***D.D.C. Is More Convenient for the Parties.*** The convenience of the parties also favors transfer for many of the same reasons as the convenience of witnesses. "The convenience of the parties favors transfer when transfer would increase convenience to the moving party without generally increasing the inconvenience to the non-movant." *Dynamic Data Technologies*, 2019 WL 2433549, at *4. As discussed above, all of the potential government employee witnesses, multiple relevant members of the White House Press Corps, and two of Plaintiffs are located in Washington, D.C., or nearby. The fact that some witnesses are likely federal officials and employees, does not change the analysis. While courts sometimes presume that government employees are available in any venue, they also recognize the burden on the government to produce witnesses for depositions and trial in other districts. *See, e.g.*, *Ruiz ex rel. E.R. v. United States*, No. 13 Civ. 1241 (KAM) (SMG), 2014 WL 4662241, at *11-13 (E.D.N.Y. Sept. 18, 2014) (transferring FTCA case alleging improper detention at Dulles International Airport to Eastern District of Virginia when, among other things, none of the government agents who had firsthand knowledge of the events resided in New York). Indeed, that burden is particularly significant here, where no government witnesses are likely to be located in this District. Furthermore, to the extent Plaintiffs claim it is more convenient for their counsel to litigate in this District than in D.D.C., that is not a proper factor for the Court to consider. *See Invivo Research, Inc. v. Magnestic Resonance Equipment Corp.*, 119 F. Supp. 2d 433, 438 (S.D.N.Y. 2000) ("the convenience of counsel is not a proper factor to consider on a motion to transfer"); *accord Fuji Photo Film Co.,*

*Ltd. v. Lexar Media, Inc.*, 415 F. Supp. 2d 370, 374 (S.D.N.Y. 2006). We note, however, that one of Plaintiffs' counsel has made amicus filings in the *Associated Press* matter. *Associated Press v. Budowich*, No. 25 Civ. 532, Do. No.48 (D.C. Cir. Apr. 8, 2025) (amicus brief filed by Knight First Amendment Clinic at Columbia University). Because the increased convenience to Defendants and non-parties of proceeding in D.D.C. outweighs any increased inconvenience for Plaintiffs, this factor also supports transfer. *Dynamic Data Technologies*, 2019 WL 2433549, at *4.

***The Location of Documents Is a Neutral Factor.*** The location of documents and other sources of proof does not favor either forum. "The location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents." *Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.*, 474 F. Supp. 2d 474, 484 (S.D.N.Y. 2007).

***A Trio of Other Factors Do Not Weigh Against Transfer.*** Three factors—this forum's familiarity with the governing law, the availability of process to compel attendance of unwilling witnesses, and the relative means of the parties—are, at most, neutral with respect to the proper venue for this action. The Government assumes that the Court is familiar with the law governing Plaintiffs' First Amendment claims. Process would be available in both Districts to compel the attendance of unwilling witnesses. And Plaintiffs fail to demonstrate that they lack the means to litigate this case in D.D.C., particularly when two of the Plaintiffs reside there. *See It's a 10, Inc. v. PH Beauty Labs*, Inc., 718 F. Supp. 2d 332, 338 (S.D.N.Y. 2010) (party opposing transfer must "offer documentation to show that transfer . . . would be unduly burdensome to [their] finances") (internal quotation marks omitted).

***The Interests of Justice and Totality of the Circumstances Support Transfer to D.D.C.*** Transfer to the district where the operative events occurred serves "the interests of justice."

*Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 745 (S.D.N.Y. 2013) (quotation marks omitted). Here, as explained above, virtually all the events alleged in the complaint occurred in the District of Columbia. Transfer also would not hinder judicial efficiency because "the case remains in the early stages of litigation" and "there has not yet been a significant investment by the Southern District of New York in this case in terms of either time or work." *Dickerson v. Novartis Corp.*, 315 F.R.D. 18, 32-33 (S.D.N.Y. 2016) (granting motion to transfer). Indeed, transfer would facilitate judicial efficiency given that two cases involving the same underlying conduct, and likely many of the same witnesses and much of the same evidence, are already pending in D.D.C. In short, because this entire case arises from alleged conduct occurring at the White House that is already the subject of litigation in the District of Columbia, the "totality of the circumstances" supports transfer, *Schuyler*, 2021 WL 5853991, at *3.

***Plaintiffs' Choice of Venue is Entitled to Diminished Weight.*** "A plaintiff's choice of forum is entitled to considerable weight and is generally not disturbed unless the balance of the factors strongly favors transfer." *Dynamic Data Technologies*, 2019 WL 2433549, at *7 (quotation marks omitted). But the importance of a plaintiff's choice "measurably diminishes" where the operative facts "have few meaningful connections" to plaintiff's chosen forum. *Simpson v. Rodas*, No. 10 Civ. 6670 (CS), 2012 WL 4354832, at *10 (S.D.N.Y. Sept. 21, 2012). As explained above, given the slight connection between this District and the alleged events in this case, which are already being litigated in two cases in D.D.C., any deference to Plaintiffs' forum choice is "measurably diminishe[d]" here. *Simpson*, 2012 WL 4354832, at *10.

Finally, as the D.D.C. is the appropriate venue for this case, the Court should allow that court to adjudicate Plaintiffs' motion for a preliminary injunction, as "doing so [will] allow the transferee court to decide important issues that are critical to the disposition of the case." *Lyon v.*

*Cornell Univ*., No. 97 Civ. 7070 (JGK), 1998 WL 226193, *2 (S.D.N.Y. May 4, 1998) (citing cases). Put another way, "[i]t is preferable for the transferee court, before whom the action will be ultimately determined, to [decide the motion]." *Baldwin Hardware Corp. v. Harden Industries*, Inc., 663 F. Supp. 82, 85-86 (S.D.N.Y. 1987) (granting motion to transfer and declining to adjudicate preliminary injunction motion).

## II. THE COURT SHOULD DENY PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

Should the Court choose not to transfer this action to D.D.C., it should deny Plaintiffs' motion for a preliminary injunction, as Plaintiffs have failed to demonstrate they are entitled to this extraordinary remedy.

### A. Applicable Legal Standard

"A preliminary injunction 'is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Students for Fair Admissions v. U.S. Military Academy at West Point*, 709 F. Supp. 3d 118, 129 (S.D.N.Y. 2024) (quoting *Grand River Enterprises Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007)); *see also Winter v. Natural Resources Defense Council, Inc*., 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right."). To demonstrate entitlement to this extraordinary and drastic remedy, a movant must clearly demonstrate: "(1) irreparable harm absent injunctive relief, (2) a likelihood of success on the merits, [] (3) public interest weighing in favor of granting the injunction," and (4) "that the balance of equities tips in his or her favor." *A.H. by & through Hester v. French*, 985 F.3d 165, 176 (2d Cir. 2021) (quotation marks and footnotes omitted).

### B. Plaintiffs Fail to Establish Irreparable Harm

Plaintiffs are not entitled to injunctive relief because they cannot demonstrate irreparable harm. "A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Faiveley Transport Malmo AB v. Wabtec Corp*., 559 F.3d 110, 118 (2d Cir. 2009)). "To satisfy the irreparable harm requirement, [plaintiffs] must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent." *Grand River Enterprises Six Nations*, 481 F.3d at 66; *see also Winter*, 555 U.S. at 22 ("plaintiffs seeking preliminary relief [must] demonstrate that irreparable injury is *likely* in the absence of an injunction" (emphasis in original)). And failure to demonstrate irreparable harm is, in and of itself, grounds for denying a preliminary injunction motion: "the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." *Grand River Enterprises Six Nations*, 481 F.3d at 66.

Here, Plaintiffs' own lengthy delay in seeking injunctive relief is a sufficient basis for the Court to deny their motion. "Preliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights. Delay in seeking enforcement of those rights, however, tends to indicate at least a reduced need for such drastic, speedy action." *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985). Accordingly, "[l]ack of diligence, standing alone, may . . . preclude the granting of preliminary injunctive relief, because it goes primarily to the issue of irreparable harm." *Majorica, S.A. v. R.H. Macy & Co., Inc*., 762 F.2d 7, 8 (2d Cir. 1985).

Plaintiffs did not commence this lawsuit until October 2026—more than 20 months after Plaintiffs allege the President began enforcing the alleged policy against AP in February 2025. Compl. ¶ 2. In other words, although Plaintiffs now insist that the alleged policy causes them

irreparable harm necessitating "an extraordinary and drastic remedy," *Grand River Enterprises Six Nations*, 481 F.3d at 66, they delayed for close to two years before seeking that remedy. "Plaintiff[s'] delay seriously undermines [their] attempt to convey any sort of urgency; it indicates the lack of a truly immediate threat of irreparable harm, and weighs against granting preliminary relief." *City of Newburgh v. Sarna*, 690 F. Supp. 2d 136, 173 (S.D.N.Y. 2010).

Indeed, courts in this Circuit routinely conclude that much shorter delays preclude, or at least weigh heavily against, a finding of irreparable harm. *See, e.g.*, *Damone v. Teamsters Local 804*, No. 18 Civ. 4059 (LDH)(ST), 2018 WL 7821134, at *2 (E.D.N.Y. Oct. 30, 2018) (denying preliminary injunction due to nine-month delay); *Monowise Limited Corp. v. Ozy Media, Inc.*, No. 17 Civ. 8028 (JMF), 2018 WL 2089342, at *2 (S.D.N.Y. May 3, 2018) ("Wherever the line distinguishing between acceptable and unacceptable delay may be, [plaintiff's nine-month] delay plainly falls on the unacceptable side."); *T–Mobile Ne. LLC v. Water Authority of W. Nassau County*, 249 F. Supp. 3d 680, 684 (E.D.N.Y. 2017) (seven-month delay indicated that alleged harm was not actual or imminent); *Insurance Co. of the State of Pa. v. Lakeshore Toltest JV, LLC*, No. 15 Civ. 1436 (ALC), 2015 WL 8488579, at *3 (S.D.N.Y. Nov. 30, 2015) (seven-month delay "undercuts a finding of irreparable injury"); *Dish Network, L.L.C. v. American Broad. Cos. (In re AutoHop Litig.)*, No. 12 Civ. 4155, 2013 WL 5477495, at *10 (S.D.N.Y. Oct. 1, 2013) (six-month delay weighed against finding of irreparable harm); *Union Cosmetic Castle, Inc. v. Amorepacific Cosmetics USA, Inc.*, 454 F. Supp. 2d 62, 70 (E.D.N.Y. 2006) (no irreparable harm where plaintiff waited five months to sue); *Worldwide Sport Nutritional Supplements, Inc. v. Five Star Brands, LLC*, 80 F. Supp. 2d 25, 35 (N.D.N.Y. 1999) (seven-month "delay between [plaintiff's] learning of the possible misappropriation [of trade secrets] and filing the Complaint and Order to Show Cause, is enough to defeat Plaintiff's motion for a preliminary injunction" (collecting cases)).

Courts have taken account of plaintiffs' delays in moving for an injunction—and concluded that those delays weigh against a finding of irreparable harm—even where the plaintiffs assert First Amendment claims. *See, e.g.*, *Council for Responsible Nutrition v. James*, No. 24 Civ. 1881 (ALC), 2024 WL 1700036, *9 (S.D.N.Y. Apr. 19, 2024) ("Plaintiff's substantial and inexcusable delay in moving for preliminary relief five months after the [statute] was enacted in October 2023, erodes its claims of immediate, irreparable, and impending injury."); *Shady v. Tyson*, 5 F. Supp. 2d 102, 108-09 (E.D.N.Y. 1998) (no irreparable injury when relief sought "more than one year after learning of the adverse employment decision"); *Costello v. McEnerny*, 767 F. Supp. 72, 78 (S.D.N.Y. 1991) (no irreparable harm where plaintiff sought relief one year after employment action he alleged violated First Amendment rights); *see also Million Youth March, Inc. v. Safir*, 18 F. Supp. 2d 334, 340 & n.36 (S.D.N.Y. 1998) (holding that "this case does not present facts upon which plaintiff's delay alone warrants a conclusion that irreparable harm is unlikely, particularly in light of the constitutional nature of plaintiff's claim," but declining to "say that delay, even unaccompanied by prejudice, never would justify denial of interlocutory relief in a case asserting constitutional claims"). Taking account of Plaintiffs' delay is particularly appropriate where, as here, Plaintiffs also fail to demonstrate a clear likelihood of success on the merits. *See infra*, Argument § II.C.

Furthermore, Plaintiffs fail to show irreparable harm because the alleged listener injury they claim to be suffering from—Defendants allegedly excluding reporters from the White House—has already been enjoined or determined unlikely to be a First Amendment violation. Plaintiffs cannot claim to be suffering irreparable harm from Defendants revoking the press credentials of CNN, Politico, and MS NOW reporters in September 2026, because a district court has already issued a preliminary injunction directing "Defendants (except for President Trump)

and their agents, representatives, and all persons or entities acting in concert with them" to "immediately return, reinstate, and restore the White House 'hard pass' press credentials held by employees of CNN, MS NOW, and Politico that were revoked on or about September 18, 2026." *Cable News Network*, 2026 WL 3063460, at *2. There is therefore nothing for this Court to enjoin, and because Plaintiffs cannot show that they face any future harm, they are not entitled to injunctive relief. *See Winter*, 555 U.S. at 20 (explaining that the movant must show "that he is likely to suffer irreparable harm in the absence of preliminary relief"). Plaintiffs cannot justify their request for prospective injunctive relief by pointing to past injury. *See Halkin v. Helms*, 690 F. 2d 977, 1005 (D.C. Cir. 1982) ("[P]ast injury alone is not sufficient to merit the award of relief against future conduct. A great deal more is required, particularly when the relief sought would broadly enjoin the conduct of vital governmental functions which require the exercise of discretion in a myriad of unpredictable circumstances.").

Plaintiffs likewise cannot claim to be suffering irreparable harm from Defendants allegedly excluding AP from the Oval Office, Air Force One, and similar restricted spaces because the D.C. Circuit has already held that AP itself was unlikely to demonstrate that this conduct violates the First Amendment. *Associated Press*, 2025 WL 1649265, at *1. Specifically, the D.C. Circuit concluded that there was unlikely to be a First Amendment viewpoint claim because these restricted areas "are not any type of forum" to which the First Amendment applies, and the White House, therefore, "may consider journalists' viewpoints when deciding whether to grant access" there. *Id.* at 4. The D.C. Circuit further concluded that AP was unlikely to prevail on its First Amendment retaliation claim because "[t]he White House's decision to exclude the AP from limited-access presidential events is not the type of action that counts as materially adverse for purposes of a retaliation claim." *Id.* at 10. For the same reason, Plaintiffs cannot claim to be

suffering irreparable harm from the White House's exclusion of reporters from CNN, Politico, MS NOW, and the Independent from Air Force One and other restricted areas, Compl. ¶ 44, which the D.C. Circuit indicated are unlikely to give rise to First Amendment claims. As Plaintiffs cannot make a clear showing that any of these reporters were excluded from the White House in violation of the First Amendment, they cannot show that this exclusion causes them irreparable injury.

### C. Plaintiffs Fail to Show a Clear Likelihood of Success on the Merits

To begin, Plaintiffs cannot show a clear likelihood of success on the merits of their First Amendment claims because they have not demonstrated the requisite Article III standing to do so. At its "irreducible constitutional minimum," Article III standing requires a plaintiff, as the party invoking the Court's jurisdiction, to establish three elements: (1) a concrete and particularized injury-in-fact, either actual or imminent, and not conjectural or hypothetical, (2) a causal connection between the injury and defendants' challenged conduct, and (3) a likelihood that the injury suffered will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Courts also consider prudential concerns, such as "the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014). The "standing inquiry has been especially rigorous when reaching the merits of a dispute would force [the court] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Am. Civ. Liberties Union v. Clapper*, 785 F.3d 787, 800 (2d Cir. 2015) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013)).

Standing is also relevant to the "likelihood of success on the merits" preliminary injunction factor, as that factor includes both the merits of the underlying claims and jurisdictional issues. *See Murthy v. Missouri*, 603 U.S. 43, 58 (2024); *see also Munaf v. Geren*, 553 U. S. 674, 690 (2008) (noting that when considering "likelihood of success on the merits" for a preliminary injunction, jurisdictional "impediments" "mak[e] such success more unlikely"). Plaintiffs must demonstrate standing at each stage of the litigation with an increasing burden of proof. *Do No Harm v. Pfizer Inc.*, 126 F. 4th 109, 119 (2d Cir. 2025) (citing *Lujan*, 504 U.S. at 561). "When a preliminary injunction is sought, a plaintiff's burden to demonstrate standing will normally be no less than that required on a motion for summary judgment." *Id.* (internal quotation and citation omitted). "Consequently, to establish standing for a preliminary injunction, a plaintiff cannot rest on such mere allegations as would be appropriate at the pleading stage but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true." *Id.* (internal quotation and citation omitted). When a district court denies a preliminary injunction because the plaintiff failed to establish standing, it may also consider whether the action as a whole must be dismissed for the same reason. *Id.* at 120-21 (if "a plaintiff's failure to establish standing to secure a preliminary injunction has nothing to do with the measure of evidence the plaintiff has produced," but instead results from a failure of the "plaintiff's legal theory itself," that "may doom the plaintiff's standing" and the district court "should dismiss the claim altogether.")

First, Plaintiffs cannot establish an injury-in-fact for the same reasons that they cannot show irreparable injury: the alleged conduct has already been enjoined or determined unlikely to violate the First Amendment. *See Murthy*, 603 U.S. at 58 (plaintiff must show "a real and immediate threat of repeated injury") ( quoting *O'Shea v. Littleton*, 414 U. S. 488, 496 (1974)); *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983) ("[Plaintiff's] standing to seek the injunction

requested depended on whether he was likely to suffer future injury from the [challenged practice]"); *Clapper*, 568 U. S. at 409 ("[A]llegations of possible future injury are not sufficient." (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).

Second, Plaintiffs fail to establish an injury-in-fact because their alleged injury is not particularized. "For an injury to be particularized, as required for Article III standing, it must affect the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 339 (2016) (quotations omitted); *United States v. Richardson*, 418 U.S. 166, 179-80 (1974) (plaintiff "must have a personal stake in the outcome" and must assert "something more than generalized grievances.") (quotations omitted); *Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("[W]hen the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction.").

Plaintiffs contend that they have suffered injury because the alleged policy essentially deprives them of independent reporting from the White House Press Corps. *See* Compl ¶ 5. But this is not an alleged harm that is particular to Plaintiffs, as any member of the general public could claim current or future injury from the loss or chilling of independent reporting. Indeed, Plaintiffs concede that the "ultimate injury here . . . is to the democratic public." Compl. ¶ 4. It is well-established that "a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy." *Lujan*, 504 U.S. at 573-74; *accord Bender v. Obama*, 653 F. App'x 31, 32 (2d Cir. 2016) (summary order) (plaintiff challenging constitutionality of the Iran Nuclear Agreement Review Act failed to show injury-in-fact). That is precisely what Plaintiffs seek to do here. Plaintiffs do not claim to be among the journalists and

media outlets who were allegedly excluded or threatened with exclusion from the White House (who have filed their own lawsuits challenging the government actions directly affecting them). Rather, Plaintiffs are "concerned bystanders" who are using Article III standing "simply as a vehicle for the vindication of value interests" and in whose hands standing "is not to be placed." *Hollingsworth v. Perry*, 570 U.S. 693, 707 (2013) (quoting *Diamond v. Charles*, 476 U.S. 54, 62 (1986)).

While Plaintiffs attempt to make their alleged injury appear more particularized by arguing that they rely on independent press coverage of the White House Press Corps for their research, journalism, and teaching work, Plaintiffs fail to explain how their alleged harm would be any different than that of any other member of the public, regardless of what work they do, or whether they work at all. Presidents speak on a wide variety of matters of public importance, and Plaintiffs allege that there are approximately 1,200 journalists who have White House press credentials. Compl. ¶ 25. Thus, virtually any member of the public who follows any news media can claim that they similarly rely on the White House Press Corps to make important decisions in their work or personal lives and that they too could suffer injury when the coverage is not independent. Because Plaintiffs' claimed injury, like these other potential complaints, are grievances available to any member of the public, they cannot provide a basis for Article III standing. *See, e.g.*, *Kerven v. United States*, 792 Fed.Appx. 900, 901-02 (2d Cir. 2020) (affirming dismissal of action challenging the Constitutionality of the Tax Cuts and Jobs Act because plaintiff could not show particularized injury as taxpayer and consumer) (summary order); *Equal Vote Am. Corp. v. Pelosi*, No. 19 CIV. 777 (KPF), 2020 WL 1467319, at *1–4 (S.D.N.Y. Mar. 26, 2020) (finding no injury-in-fact to confer standing where plaintiff alleged harm from federal government shutdown, including breach of "social contract"; fear of safety in subway due to lack of funding to FBI; fear

of food safety because of lack of funding to FDA; fear of air and water pollution from lack of funding to EPA; and payment of extra costs as a New Yorker from continuing operation of Statue of Liberty and Ellis Island during shutdown); *Fischer v. Cruz*, No. 16 Civ. 1224 (JS) (ARL), 2016 WL 1383493, at *2 (E.D.N.Y. Apr. 7, 2016) (plaintiff seeking to disqualify candidate from election failed to show injury in fact where he "share[d] [ ]his alleged injury with every other voter in the State of New York").

Plaintiffs' reliance on this Court's prior decision in *Pen American Center, Inc. v. Trump*, 448 F. Supp. 3d 309 (S.D.N.Y. 2020) (Pl. Br. at 14, 17), is unavailing. In *Pen American*, the Court held that an association of journalists had standing to assert a First Amendment claim premised upon the President denying journalists press credentials to access the White House. Plaintiffs point to the Court's determination that the alleged chilling of the White House Press Corps impeded the plaintiffs' "right to receive information." *Id.* at 324; Pl. Br. at 14. But in *Pen American*, unlike here, the plaintiff association alleged that one of its member reporters had his press credentials revoked and was excluded from the White House, and the Court reasoned that the reporter had "a unique interest in hearing the questions and discussion of his press corps colleagues with [the President], which facilitate [his] own reporting." *Pen. Am.*, 448 F. Supp. 3d at 321. Not so here. Plaintiffs do not claim to be members of the White House Press Corps who were denied access to the White House, but rather consumers of White House Press Corps coverage, which they claim has been chilled by the President's alleged policy. The Court in *Pen American* went on to reject a broader listener injury theory of standing, noting that "[t]o the extent Plaintiff argues that [the reporter] has experienced a receipt-of-information injury because these challenged actions have chilled media speech generally, the Complaint fails to plead how this injury is particularized to [him]" as he "is similarly situated to all journalists and the public at large, in being deprived of this

speech." *Id.* at 322. That is effectively what Plaintiffs attempt to do here, as any journalist or member of the public could claim listener injury from chilling of White House Press Corps speech. And while the Court in Pen American found that the journalist association also had direct organizational standing, the Court reasoned that the Plaintiff, whose mission was to "defend[] the free speech rights of journalists," had "a particular interest in receiving and monitoring th[e] speech[,]" noting that the association "monitors how government interacts with press, and its own members are in the White House press corps". *Id.* at 315, 324. Here, conversely, Plaintiffs cannot show the particularized harm of an organization that exists to defend the First Amendment rights of its White House reporter members.

Third, Plaintiffs cannot show standing because they do not show a concrete and specific connection to any reporters who allegedly were excluded from the White House or whose speech was assertedly chilled by the alleged policy. "While the [Supreme] Court has recognized a First Amendment right to receive information and ideas, the Court has identified a cognizable injury only where the listener has a concrete, specific connection to the speaker. *Murthy*, 603 U.S. at 75 (holding that social media users did not have standing to assert First Amendment listener injury claim challenging censorship of other social media users). For example, in *Kleindienst v. Mandel*, the Supreme Court held that a group of professors had a First Amendment interest in challenging the visa denial of a person they had invited to speak at a conference. 408 U.S. 753, 762 (1972). And in *Virginia Board of Pharmacy v. Virginia Citizens Consumer Council*, *Inc*., cited by Plaintiffs (Pl. Br. at 14), the Court found that prescription-drug consumers in Virginia had standing to challenge a law barring licensed retail pharmacists from advertising drug prices because they had a direct need for the suppressed information to make their medication purchasing decisions. 425 U.S. 748, 756–57 (1976). In both cases, the listeners' connection to the suppressed speech was

direct and particularized — not shared with the public at large. The Supreme Court, however, has refused to extend listener standing beyond such concrete connections. In *Murthy*, the plaintiff social media consumers alleged that receiving "unfettered speech on social media is critical to their work as scientists, pundits, and activists." 603 U.S. at 75. But the Court rejected this "startlingly broad" theory, which "would grant all social-media users the right to sue over someone else's censorship." *Id*. So too here. Plaintiffs likewise assert that they rely on independent White House press coverage for their scholarship, teaching, journalism, or advocacy, Compl. ¶ 5, but they do not identify a specific and concrete connection to the allegedly chilled White House reporting that any member of the public who follows the news could not also assert. Thus, as in *Murthy*, finding that standing exists here would open the door to a "startlingly broad" number of claims. *Id*.

Plaintiffs do not improve their standing argument by citing *Abramowitz v. Lake*, 824 F. Supp. 3d 1, 15 (D.D.C. 2026), Pl. Br. at 14-15. In *Abramowitz*, a district court held that an international reporter's organization showed an injury-in-fact when a federal agency restricted Voice of America ("VOA") broadcasts overseas, finding that it had presented evidence of a "concrete, specific connection" to the broadcasts. *Id*. In particular, the court found that the plaintiff presented detailed evidence that its journalists in specific countries "where media is tightly controlled" relied on these broadcasts for information, that the broadcasts "[could] not be replicated by domestic outlets," that these reporters otherwise would "have to cultivate their own sources at potential risk to their safety," and that "at least one VOA journalist has been jailed in Vietnam for reporting on the government." *Id*. Here, by contrast, Plaintiffs make no comparable

showing of any "concrete, specific connection" to White House press coverage.[3] Accordingly, Plaintiffs fail to demonstrate standing.

Finally, Plaintiffs cannot show a likelihood of success on the merits of their First Amendment claims premised on Defendants denying reporters access to restricted Presidential areas because, as noted above, the D.C. Circuit has already held that AP is unlikely to prevail on its similar First Amendment claims. *Associated Press*, 2025 WL 1649265, at *4. Since the exclusion of reporters does not violate the First Amendment, Plaintiffs' First Amendment claims premised on such exclusion are equally likely to fail.

**D. Plaintiffs Fail to Show that a Preliminary Injunction Furthers the Public Interest**

The final two factors, the balance of equities and the public interest, also weigh in Defendants' favor. *See Nken v. Holder*, 556 U.S. 418, 435–36 (2009) (final two factors merge when the government is the party opposing a motion for preliminary injunctive relief). Because, as explained above, Plaintiffs cannot establish the first two factors necessary to obtain a preliminary injunction, "it is clear they cannot make the corresponding strong showings [on the second two factors] required to tip the balance in their favor." *Davis v. Pension Benefit Guarantee Corp.*, 571

[3] The other cases Plaintiffs cite are even less applicable, as they do not involve First Amendment listener claims or involve smaller groups of listeners who were denied access to speech. *See, e.g.*, *Sherrill v. Knight*, 569 F. 2d 124 (D.C. Cir. 1977) (holding that revocation of a reporter's White House press credentials implicated the First Amendment, but not addressing whether consumer of his reporting would have standing to assert a First Amendment listener claim); *Houchins v. KQED, Inc.*, 438 U.S. 1, 15-16 (1978) (holding that broadcasting company and NAACP had no standing to assert First Amendment claim based on denial of access to county jail because there is no "right of access to government information or sources of information within the government's control and "the media have no special right of access . . . different from or greater than that accorded the public generally"); *Bd. of Educ. v. Pico*, 457 U.S. 853, 866 (1982) (students could assert First Amendment claim against school board for removing books from school library because First Amendment "applied in light of the special characteristics of the school"); *In re Dow Jones & Co.*, Inc., 842 F. 2d 603, 607 (2d Cir. 1988) (holding that media had standing to assert First Amendment claim based on gag order preventing litigants from making certain statements to media during trial, but not addressing whether media consumers also could show standing).

F.3d 1288, 1295 (D.C. Cir. 2009). Indeed, these factors would tip in Defendants' favor if the Court were to consider them further. As noted above, any irreparable harm from the revocation of press passes to CNN, Politico, and MS NOW has been enjoined, and the D.C. Circuit has held that the harm to the President in controlling access to his work spaces outweighed any alleged harm from reporter exclusion. *Associated Press*, 2025 WL 1649265, at *12. Accordingly, Plaintiffs cannot carry their burden of making a clear showing that the public interest favors injunctive relief.

## CONCLUSION

For the foregoing reasons, the Court should transfer this action to D.D.C. but if it does not, it should deny Plaintiffs' motion for a preliminary injunction.

Dated: November 16, 2026
New York, New York

Respectfully submitted,

JAMES M. MCDONALD
United States Attorney

By: /s/ *Pierre G. Armand*
PIERRE G. ARMAND
Assistant United States Attorney
Telephone: (212) 637-2724
Email: pierre.armand@usdoj.gov

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.1(c), the above-named counsel hereby certifies that this memorandum complies with the word-count limitation of this Court's Local Civil Rules. As measured by the word processing system used to prepare it, this memorandum contains 8,729 words.

Dated: New York, New York
November 16, 2026

*/s/Pierre G. Armand*
PIERRE G. ARMAND
Assistant United States Attorney